1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TED DARNELL DANIELS,                      No.  2:16-cv-0551 KJM AC

12                 Plaintiff,

13          v.                                 ORDER AND

14   ERIC ARNOLD, et al.,                      FINDING AND RECOMMENDATIONS

15                 Defendants.

16

17          Plaintiff, a California state inmate, proceeds pro se in this civil rights action under 42

18   U.S.C. § 1983.  Before the court are plaintiff's motion to compel discovery (ECF No. 59);

19   defendant's motion for summary judgment (ECF No. 63); plaintiff's motion for partial summary

20   judgment (ECF No. 72); and plaintiff's motion to strike (74).

21       I.       BACKGROUND

22          Plaintiff's complaint alleges inadequate medical care related to the treatment of a skin

23   condition and related concerns regarding medication side effects, covering a period of

24   approximately 14 years and naming numerous medical providers and prison officials as

25   defendants.  On screening, the undersigned found that the complaint supported a single Eighth

26   Amendment claim against Dr. Lotersztian.  ECF No. 27 (findings and recommendations).  The

27   district judge agreed, dismissed all other defendants, and ordered that the case would proceed

28   against Dr. Lotersztian only.  ECF No. 58.

                                             1

Plaintiff alleged in relevant part that he was prescribed a topical corticosteroid for more than ten years, beginning in 2002, by various prison physicians to treat a rash.  He alleged the synthetic corticosteroids caused serious side effects and damaged his nervous system.  In September 2014, Dr. Lotersztain stopped the corticosteroid treatment abruptly, without tapering the dose or providing interim palliative care, which caused plaintiff severe withdrawal symptoms including uncontrollable itching, bloody blisters on his feet, repeated mental health crises, shrunken genitals, puffy knees, and "elephant skin" on various parts of his body.  Dr. Lotersztain improperly denied plaintiff's requests for referral to a dermatologist and for specific diagnostic tests including tests for adrenal insufficiency, offering him only medication for anxiety.

II.      MOTION TO COMPEL DISCOVERY (ECF No. 59)

The outstanding motion to compel, which was filed after the close of discovery, followed orders that the undersigned issued during the discovery period to facilitate plaintiff's access to his own prison medical records.  See ECF No. 49 (order extending discovery deadline to accommodate Olson review[1]); ECF No. 52 (order granting plaintiff's request for subpoenas); ECF No. 56 (order directing defense counsel to provide plaintiff with complete copy of the medical records obtained by defendant); see also ECF No. 57 (defendant's statement of compliance).

The motion at ECF No. 59 seeks compelled production of specified medical records and inmate appeals.  The motion was dated September 17, 2020, id. at 2, and it was filed by the court on September 24, 2020.  Discovery closed on July 31, 2020.  ECF No. 49.  Accordingly, the motion at ECF No. 59 came too late.  Moreover, defense counsel has represented as an officer of the court that plaintiff was provided copies of the medical and health care appeals records in defendant's possession, and that the production has been made repeatedly—including after the close of discovery, in response to ECF No. 59.  See ECF No. 62.  For all these reasons, the motion to compel will be denied.

---

[1]  An "Olson review" refers to the right of California inmates to inspect and copy non-confidential records maintained in their central and medical files, as established by In re Olson, 37 Cal. App.3d 783 (1974).

1     ////

2     III.     <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 63)</u>

3     A. <u>Overview</u>

4     Dr. Lotersztain seeks summary judgment on the grounds that (1) the undisputed facts

5 establish that she provided appropriate care to plaintiff; (2) plaintiff cannot establish any link

6 between her treatment decisions and any harm he claims to have suffered; and (3) she is entitled

7 to qualified immunity. ECF No. 63 (motion). Plaintiff opposes the motion on grounds that Dr.

8 Lotersztain acted with deliberate indifference to his needs. ECF No. 69.[2] Defendant filed a

9 reply. ECF No. 71.

10     B. <u>Standards Governing Summary Judgment</u>

11     Summary judgment is appropriate when the moving party "shows that there is no genuine

12 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13 Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

14 of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627

15 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The

16 moving party may accomplish this by "citing to particular parts of materials in the record,

17 including depositions, documents, electronically stored information, affidavits or declarations,

18 stipulations (including those made for purposes of the motion only), admissions, interrogatory

19 answers, or other materials" or by showing that such materials "do not establish the absence or

20 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

21 support the fact." Fed. R. Civ. P. 56(c)(1).

22     "Where the non-moving party bears the burden of proof at trial, the moving party need

23 only prove that there is an absence of evidence to support the non-moving party's case." <u>Oracle</u>

24 <u>Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B).

25 Indeed, summary judgment should be entered, "after adequate time for discovery and upon

26

27 [2] The filing docketed as plaintiff's opposition to the motion, ECF No. 68, is his response to
defendant's Statement of Undisputed Facts. ECF No. 69 is his opposition brief, and his exhibits

28 are filed at ECF No. 70.

1   motion, against a party who fails to make a showing sufficient to establish the existence of an

2   element essential to that party's case, and on which that party will bear the burden of proof at

3   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

4   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

5   a circumstance, summary judgment should "be granted so long as whatever is before the district

6   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

7   56(c), is satisfied." Id.

8           If the moving party meets its initial responsibility, the burden then shifts to the opposing

9   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

10  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

11  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

13  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

14  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

15  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

16  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

17  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

18          In the endeavor to establish the existence of a factual dispute, the opposing party need not

19  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

20  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21  trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

22  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

23  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

24  whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

25  quotation marks omitted).

26          "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

27  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

28  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

1   opposing party's obligation to produce a factual predicate from which the inference may be

2   drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

5   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

6   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

7   U.S. at 289).

8         C.  Legal Principles Governing Eighth Amendment Claim

9         In order to state a § 1983 claim for violation of the Eighth Amendment based on

10  inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to

11  evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

12  (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and

13  that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294,

14  299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  A serious

15  medical need exists if the failure to treat a prisoner's condition could result in further significant

16  injury or the unnecessary and wanton infliction of pain.  See Wood v. Housewright, 900 F. 2d

17  1332, 1337-41 (9th Cir. 1990).  The requisite state of mind is "deliberate indifference."  Hudson

18  v. McMillian, 503 U.S. 1, 4 (1992).

19        In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very strict

20  standard which a plaintiff must meet in order to establish "deliberate indifference."  Negligence is

21  insufficient.  Farmer, 511 U.S. at 835.  Even civil recklessness (failure to act in the face of an

22  unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at

23  836-37.  Neither is it sufficient that a reasonable person would have known of the risk or that a

24  defendant should have known of the risk.  Id. at 842.  A prison official acts with deliberate

25  indifference only if he subjectively knows of and disregards an excessive risk to inmate health

26  and safety.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

27        A difference of opinion between an inmate and prison medical personnel—or between

28  medical professionals—regarding the appropriate course of treatment does not by itself amount to

5

deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

### D. Undisputed Facts

Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court upon review of the record.[3]  Defendant Mariana Lotersztain, M.D. saw plaintiff multiple times at California State Prison, Solano.  DUF ¶ 1.  On June 4, 2014, plaintiff requested TAC (triamcinolone) ointment to treat a rash.  DUF ¶ 2.[4]  This medication was prescribed on June 6 and again on June 28, 2014.  Pl. Ex. 10 (ECF No. 70 at 19-20).  Dr. Lotersztain prescribed hydrocortisone 1% cream for 90 days on September 24, 2014, and renewed the prescription on November 11, 2014, to treat his rashes.  DUF ¶ 3.

On December 4, 2014, Dr. Lotersztain saw plaintiff for a rash on his back.  DUF ¶ 4.  At this appointment, plaintiff reported an "allergy" to hydrocortisone cream.  Id.  Dr. Lotersztain prescribed cream instead of ointment to be used "as needed."  It was the recommended practice at that time to try to prescribe cream instead of ointment because of concerns of possible use of ointment by inmate patients for illicit purposes.  DUF ¶ 5.  The prescription of ointments was acceptable only if the medical necessity could be justified.  Id.  There is no evidence of a difference of effectiveness between cream and ointment.  DUF ¶ 6.  On December 10, 2014, Dr.

---

[3]  Defendant's Separate Statement of Undisputed Material Facts ("DUF") is at ECF No. 63-2, and Dr. Lotersztain's declaration is at ECF No. 63-1.  Plaintiff's response is at ECF No. 68, and his exhibits are at ECF No. 70.  The exhibits are out of order and many exhibit numbers are obscured. It is not the court's job to comb through the record looking for evidence that may create a factual dispute.  See Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1029 (9th Cir. 2001).  Accordingly, the court considers only those exhibits which have been specified in plaintiff's response to Defendant's Separate Statement of Undisputed Material Facts and which are identifiable by number.

[4]  Plaintiff attempts to dispute this fact, but only on the ground that he had previously been prescribed triamcinolone at CSP-Solano.  He admits that he requested the medication on June 4, 2014.  ECF No. 68, ¶ 2.

Lotersztain stopped the prescription, since it is usually not indicated for prolonged periods of time.  DUF ¶ 7.  It is the standard of care to prescribe steroid creams "prn" or "as needed" for rashes, meaning that use is intermittent and not meant for every day.  DUF ¶ 8.  Steroid creams are not addictive and there is no standard of care to "taper" their use.  Id.  The possibility of pituitary suppression and adrenal insufficiency from stopping hydrocortisone cream in a well-developed adult is almost zero.  DUF ¶ 9.  The only recommendation concerning prescribing and stopping steroid creams applies only to babies and small children.  Id.[5]

On December 12, 2014, Dr. Lotersztain noted that plaintiff's blood pressure was a little high.  DUF ¶ 10.  One of the signs of adrenal insufficiency is low blood pressure.  Id.  If plaintiff had adrenal insufficiency, he would have had signs and symptoms at that time.  Id.  Dr. Lotersztain saw plaintiff again on January 22, 2015.  DUF ¶ 11.  He had no rash, but he was still asking for ointment instead of cream.  Id.  He got upset and left the room in response to not getting the ointment.  Id.[6]

On February 19, 2015, Dr. Lotersztain prescribed a more potent topical corticosteroid, triamcinolone cream, for 90 days for plaintiff's rashes.  DUF ¶ 12.  Dr. Lotersztain renewed this prescription again on July 16, 2015.  Id.[7]

Dr. Lotersztain saw plaintiff on July 15, 2015, and he had no rash and reported he was able to vigorously exercise.  DUF ¶ 13.  There was no indication he was harmed in any way from

---

[5]  Plaintiff disagrees with defendant's assertions that the hydrocortisone prescription was within the applicable standard of care, that creams were preferred over ointments as a matter of institutional policy, that creams and ointments are equally effective, that defendant discontinued his prescription for legitimate medical reasons, and that tapering is unnecessary.  ECF No. 68 at 3-8.  Plaintiff does not identify admissible evidence that puts any of these facts in dispute.  His personal opinions, and his layman's interpretation of various medical reference materials and articles reproduced in his exhibits, are insufficient to raise a triable issue regarding medical facts and the applicable standard of care.

[6]  Plaintiff objects that this fact is inaccurate because defendant "left out the part of conversation when I Plaintiff's explaining about my experience and believe of my dependency to these topical steroid treatment.  I Plaintiff's did see Dr. Lotersztain and my rash had clear Up because I Plaintiff's had gotten some from another inmate, because the Medical Triage line was taking too long."  ECF No. 68 at 10.  Plaintiff does not dispute the material facts asserted by defendant.

[7]  Plaintiff does not dispute that these medications were prescribed on these dates, but argues without citation to competent evidence that defendant prescribed insufficient amounts of the more effective medication in retaliation for his complaints about her.  ECF No. 68 at 11-12.

stopping the hydrocortisone cream in December.  Id.  On July 17, 2015, plaintiff was seen by another doctor in relation to a 602 medical appeal.  DUF ¶ 14.  He was requesting ointment instead of cream.  Id.  The reviewing doctor denied the request and educated the patient on risks of prolonged steroid use.  Id.[8]

Dr. Lotersztain ordered blood work for plaintiff in August of 2015.  DUF ¶ 15.  His sodium and potassium levels, which can be altered if there is adrenal insufficiency, were normal.  Id.  Dr. Lotersztain also checked plaintiff's cortisol level.  Id.  There were no signs of adrenal insufficiency.  Id.[9]

On a few occasions in 2015 plaintiff requested and obtained oral steroids (prednisone) from providers covering the prison's urgent care area.  DUF ¶ 16.  Dr. Lotersztain did not want to prescribe this drug, both to avoid dependence on steroids and out of concern for plaintiff developing adrenal insufficiency if systemic (rather than topical) steroids were used.  Id.  In late 2015 and early 2016, plaintiff started complaining of his penis shrinking and low energy; he requested prednisone.  DUF ¶ 17.  Prednisone is not indicated for these symptoms, and can trigger pituitary suppression if stopped.  DUF ¶ 18.[10]

According to Dr. Lotersztain, the symptoms plaintiff complained of are consistent with andropause (male menopause).  DUF ¶ 19.  This can be treated with testosterone, not prednisone.  Id.  However, this treatment is not considered medically necessary and it can be detrimental to the patient.  Id.[11]  The change in the topical treatment for plaintiff's rashes would not have caused the symptoms he was complaining of, and Dr. Lotersztain did extensive bloodwork to make sure he

---

[8]  Plaintiff insists that neither Dr. Lotersztain nor Dr. Hsieh (the doctor who reviewed his 602) addressed plaintiff's specific concerns about his medications, but he does not dispute the facts set forth above.  See ECF No. 68 at 12-13.
[9]  Plaintiff attempts to challenge defendant's medical conclusions, ECF No. 68 at 13-15, but his own medical opinions and diagnostic speculations would not be admissible at trial.
[10]  Plaintiff challenges defendant's representation regarding her reasons for not prescribing prednisone, but he does not identify evidence that would support a contrary inference.  Plaintiff again disagrees with defendant's statements about what drugs are and are not medically indicated for what conditions, but his opinions on these questions are not admissible and do not create a triable issue.  See ECF No. 68 at 15-16.
[11]  Plaintiff's lengthy discourse on this issue is not supported by admissible evidence and does not create a genuine evidentiary dispute about defendant's facts.  See ECF No. 68 at 17-18.

1    ////

2    was not adversely affected by the change in treatment.  DUF ¶ 20.[12]

3         E.   Analysis

4         Defendant argues that she is entitled to summary judgment because plaintiff cannot

5    identify evidence that would support a jury finding she acted with deliberate indifference to

6    plaintiff's medical needs.  The undersigned agrees.

7         The contemporaneous prison medical records presented by plaintiff corroborate Dr.

8    Lotersztain's declaration regarding the treatment that she provided during the relevant period.

9    These undisputed facts establish that defendant responded to plaintiff's complaints, adjusted his

10   medications according to her assessment of his medical needs, and obtained lab work to monitor

11   his response to medication changes.  Plaintiff vigorously argues that Dr. Lotersztain's medical

12   judgments were wrong and that he required a different course of treatment, but arguments are not

13   facts.  A difference of opinion between plaintiff and defendant regarding the appropriate course of

14   treatment does not establish deliberate indifference to serious medical needs.  Snow v. McDaniel,

15   681 F.3d 978, 987 (9th Cir. 2012).  To create a triable issue based on a difference of opinion,

16   plaintiff must identify evidence that defendant's chosen course of treatment was "medically

17   unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

18   Plaintiff has adduced no such evidence.  His own statements about what is and is not medically

19   indicated would not be admissible at trial and therefore cannot defeat summary judgment.

20        Even if defendant's treatment fell below the applicable standard of care, as plaintiff

21   argues—and there is no evidence that it did—that would establish negligence at most.  Negligent

22   medical care does not rise to the level of an Eighth Amendment violation.  Farmer, 511 U.S. at

23   835.  Nor does misdiagnosis, whether framed as negligence or medical malpractice or both.  See

24   Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's decision not to operate

25   because he incorrectly believed plaintiff did not have a hernia was negligent misdiagnosis or

26   disagreement with diagnosing doctor and did not constitute deliberate indifference); Estelle, 429

27

28   [12]  Plaintiff strenuously disagrees with defendant's medical conclusions and the adequacy of the
     tests that she conducted.  ECF No. 68 at 18-19.

1    U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because

2    the victim is a prisoner.").

3         Plaintiff can establish deliberate indifference only by presenting evidence that defendant

4    subjectively knew that plaintiff needed to be tapered off of the original medication, or that an

5    ointment rather than a cream was medically necessary, or that he suffered from adrenal

6    deficiency, or that he required steroids, and that her failure to act accordingly was a deliberate

7    choice to disregard the serious risks to his health thus presented.  See Toguchi, 391 F.3d at 1057.

8    Even if defendant should have known those things, that would not be enough to establish

9    deliberate indifference.  See Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir.

10   2002) ("If a [prison official] should have been aware of the risk, but was not, then the [official]

11   has not violated the Eighth Amendment, no matter how severe the risk.").

12        Here, plaintiff has not identified admissible evidence that would support a conclusion

13   defendant acted with the requisite state of mind.  Plaintiff's arguments are full of rhetorical

14   assertions regarding defendant's hostility to him and her nefarious motivations for not treating

15   him as he desired, but no rational jury could draw an inference of deliberate indifference from

16   these statements.  Plaintiff's allegations regarding defendant's subjective state of mind are

17   entirely speculative and therefore of no evidentiary value.  Even if a jury accepted his allegations

18   regarding the tone of some interactions, a provider's frustration with a patient does not support an

19   inference that treatment decision were made with deliberate indifference to the patient's actual

20   medical needs.

21        For all these reasons, the record taken as a whole could not lead a rational trier of fact to

22   find for plaintiff.  Accordingly, there is no genuine issue for trial, see Matsushita, 475 U.S. at 587,

23   and the motion for summary judgment should therefore be granted.

24        Defendant also seeks summary judgment on grounds of qualified immunity, which shields

25   state actors performing discretionary functions from civil damages if their conduct does not

26   violate clearly established statutory or constitutional rights of which a reasonable person would

27   have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Because Dr. Lotersztain is

28   entitled to summary judgment on the merits, there is no need to separately address qualified

1  immunity.

2       IV.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 72)

3               AND TO STRIKE DEFENDANT'S "OBJECTIONS" (ECF No. 74)

4       Plaintiff filed his motion for partial summary judgment, ECF No. 72, after the deadline for

5  dispositive motions had passed.  See ECF No. 49 (order resetting dispositive motions deadline).

6  In opposition, defendant argued that the motion should be denied as untimely.  ECF No. 73.

7  Plaintiff moved to strike the opposition (which he referred to as defendant's "objections").  ECF

8  No. 74.  Because defendant is entitled to summary judgment for the reasons explained above,

9  plaintiff's motion for partial summary judgment is moot.  His motion to strike will be denied both

10  for mootness and on the merits, as plaintiff indisputably filed his motion after the applicable

11  deadline and without leave of court, which was a proper basis for defendant's opposition.

12       V.      PRO SE PLAINTIFF'S SUMMARY

13       The magistrate judge is recommending that Dr. Lotensztain's motion for summary

14  judgment be granted.  The record shows that you disagreed with the treatment she provided, but

15  does not include admissible evidence that her treatment decisions were outside the range of

16  medically acceptable options.  No jury could conclude from the evidence before the court that

17  defendant knew you were correct, and knew that the failure to provide the treatment you wanted

18  put you at risk, but deliberately acted contrary to that knowledge.  There is therefore no reason for

19  a trial in this case.  Your motions to compel discovery and for partial summary judgment were

20  both brought too late to be considered and are being denied.

21                                    CONCLUSION

22       For the reasons explained above, it is HEREBY ORDERED as follows:

23  1.  Plaintiff's motion to compel (ECF No. 59) is DENIED;

24  2.  The outstanding Order to Show Cause (ECF No. 61) is DISCHARGED; and

25  3.  Plaintiff's motion to strike (ECF No. 74) is DENIED.

26       It is FURTHER RECOMMENDED that:

27  1.  Defendant's motion for summary judgment (ECF No. 63) be GRANTED; and

28  2.  Plaintiff's motion for partial summary judgment (ECF No. 72) be DENIED.

11

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 1, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE